**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARTHA POE, in her own right** | : | |
| **and as parent and natural guardian of** | : | |
| **S. POE, a minor,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | **No. 15-2369** |
| **v.** | : | |
| | : | |
| **SOUTHEAST DELCO SCHOOL DISTRICT,** | : | |
| **MICHAEL A. P. JORDAN,** | : | |
| **ASHWINA MOSAKOWSKI, and** | : | |
| **PAUL F. HOCSHWENDER,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                                                 **December 16, 2015**

## MEMORANDUM

This case is one of three cases currently before this court arising out of alleged sexual abuse of public elementary school students by their teacher.[1]  One of those children allegedly victimized by her teacher's sexual touching, as well as her mother, have sued the teacher, employees of the school where the abuse took place, and the school district itself.  The suit alleges that the minor Plaintiff's teacher (Paul Hochschwender), school principal (Michael Jordan), assistant principal (Ashwina Mosakowski), and the school district itself (Southeast Delco School District) violated the Plaintiff's Federal Constitutional rights under the Fourteenth Amendment, as well as statutory rights conferred by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 ("Title IX").

Defendants Southeast Delco School District and Ashwina Mosakowski have jointly filed a motion challenging the sufficiency of all of Plaintiffs' claims against them.  For the reasons

---

[1] The cases marked as related are *Doe v. Southeast Delco School District*, No. 15-2369, and *Doe v. Southeast Delco School Distric*t, No. 15-3655.

that follow, Defendants' Motion to Dismiss shall be denied, except as to Plaintiffs' state-created danger claim in Count III of the Complaint against the District.

## I.   The Facts Alleged

Plaintiffs allege that Defendant Paul Hochschwender was an elementary school teacher who, before teaching at Darby Township School ("Darby"), taught at another school in Delaware County between 1993 and 2000.  At this school, he was investigated for complaints of inappropriate touching of his students.  He resigned after this investigation, but he was rehired several years later as a fifth-grade teacher at Darby.  Sometime during the 2006–07 school year, a female student in Hochschwender's fifth-grade class complained to Darby's principal and a guidance counselor that Hochschwender was inappropriately touching her.  According to the Complaint, no school officials took any action.  Jordan then became the principal of Darby in 2010.  It is further alleged that during the 2011–12 school year, the minor Plaintiff was assigned to Hochschwender's fifth-grade class, where he inappropriately touched her.  Plaintiffs reported the abuse to Principal Jordan and Assistant Principal Mosakowski, and Jordan reported this complaint to supervisory employees of the District.  Hochschwender was then transferred to teach a second grade class.  According to the Complaint, Hochschwender has since been investigated for sexually abusive conduct toward current and former Darby students, including the minor Plaintiff.  He has been charged with offenses that include indecent assault, institutional sexual assault, and corruption of minors, to which he has pleaded *nolo contendere*.

Plaintiffs assert five counts against the Defendants in this case, but only Counts II, III, and IV involve the moving Defendants.  Counts I and V relate only to the teacher accused of abusing the minor Plaintiff.  Defendants Mosakowski and the District now bring a Motion to Dismiss all claims against them.

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court must first separate the factual and legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, accepting the Complaint's factual allegations as true, the court must decide whether the plaintiffs have alleged facts that show they are entitled to relief. *Id.* This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## II.    *Monell* Claim

Count II, a *Monell* claim, alleges that the District, by and through its policy-making officials, maintained and endorsed policies and practices that resulted in violations of Plaintiffs' constitutional and federal statutory rights. The District argues that this claim should be dismissed because it fails to sufficiently identify a policy or custom that caused Plaintiffs' injuries, and because it fails to allege facts that support a finding of deliberate indifference.

The District is correct that recovery under § 1983 cannot be premised on a theory of *respondeat superior* liability. *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). Municipal liability is limited "to only those constitutional torts actually caused by the municipality." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). Thus, a Plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). When, as here, a plaintiff asserts that the injuries are a result of a municipality's *failure* to establish a policy or custom of training and disciplining its employees, the plaintiff must show "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir.1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Canton*, 489 U.S. at 390.

Such a failure "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). However, a plaintiff may also show deliberate indifference by presenting evidence that officials were aware of the *risk* of constitutional violations and the alternatives to preventing such harm, but either "deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard."  *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991); *see also Canton*, 489 U.S. at 396–97 (O'Connor, J., concurring in part and dissenting in part) (suggesting a plaintiff might show "deliberate indifference" in one of two ways: by demonstrating "that policymakers were aware of, and acquiesced in, a pattern of constitutional violations," or by demonstrating that a municipality failed "to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.").

The deliberate indifference standard likewise applies to claims that a municipality is liable for a failure to screen an employee, and

> [o]nly where adequate scrutiny of the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally

protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. at 398.

Here, Plaintiffs have alleged that the District's culpable policies or customs include the following: the failure to train District personnel to investigate abuse allegations; failure to conduct abuse investigations; failure to report credible allegations; failure to ensure compliance with state statutory requirements; failure to screen teacher applicants for past allegations of abuse; and failure to properly discipline teachers accused of abuse. Compl. at ¶ 38(a–f). Plaintiffs allege that these failures reveal deliberate indifference to complaints raised by students. Compl. at ¶ 38(g). As the moving Defendants point out, Plaintiffs do not allege facts demonstrating that the District had a pattern of failing to respond to abuse by other teachers; the allegations in the Complaint focus on the District's failures that resulted in harm from Hochschwender's particular actions. Def. Mem. Supp. Mot. to Dismiss at 9. However, pointing to Pennsylvania's mandatory reporting laws, Plaintiffs make it clear that the District knew of the risk students faced of sexual abuse at the hands of school employees; yet despite knowledge of the obvious need to act to prevent abuse, Plaintiffs allege that school officials following the school's established custom of inaction repeatedly failed to act to protect students. Pl.'s Br. in Opp. to Mot. to Dismiss at 8.

Defendants also point out that Plaintiffs have not articulated what kind of baseline training was provided to personnel or what kind of allegedly-inadequate policies were in place regarding abuse investigations. However, it is not the Court's place at this juncture to decide whether the policies and customs in place were in fact insufficient; I need only determine whether the facts, as alleged, can support such a *Monell* claim. Plaintiffs have sufficiently articulated facts supporting a claim that the District's failure to implement more rigorous training

and oversight amounts to deliberate indifference that caused Plaintiffs' constitutional injuries. Whether Plaintiffs are able to produce evidence supporting liability will be resolved at a later stage of this litigation, and this order is without prejudice to Defendants to re-assert their arguments at summary judgment, if appropriate.

### III.    State-Created Danger Claim

Count III, a state-created danger claim, alleges that the moving defendants placed the minor Plaintiff in danger of being inappropriately touched by Hochschwender.  Specifically, the Complaint alleges that Mosakowski knew or should have known of Hochschwender's propensity to abuse students, and Mosakowski nevertheless deliberately chose to assign him responsibilities that brought him into contact with young female students.  Compl. at ¶ 22.

Although the Fourteenth Amendment does not generally guarantee an "affirmative right to governmental aid or protection," an exception exists when state actors create a danger that causes a victim harm.  *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007).  A state-created-danger claim has the following elements:

(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizens or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and quotations omitted).

The moving Defendants first argue that Plaintiffs' claim is insufficient because the harm Plaintiffs suffered was not foreseeable.  To adequately plead "foreseeability," a plaintiff must

"allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 238 (3d Cir. 2008).  Plaintiffs argue that "[t]he foreseeability of a student's abuse by a teacher who has a history of abuse complaints by other students and their parents may be said to be self-evident."  Pl.'s Br. in Opp. to Mot. to Dismiss at 8.  However, this argument relies on Mosakowski having knowledge of that history of abuse complaints.  Regarding Mosakowski, the Complaint alleges that she "knew, or should have known of the past conduct and propensities of Hochschwender."  Compl. at ¶ 22.  To the extent that Plaintiffs' claim is based on the factual allegation that Mosakowski merely "should have known," but did not actually know, of Hochschwender's propensities, it cannot be said that Mosakowski's alleged actions can be the cause of a "foreseeable" harm.  However, as Plaintiffs have pleaded an alternative set of facts that claim that Mosakowski "knew" of his dangerous propensities,[2] it is reasonable to infer that Plaintiff could be a foreseeable victim of the foreseeable harm that would result from such an action.

Mosakowski also argues that she did not engage in affirmative steps to enhance a danger to the minor Plaintiff, as required by the fourth element.  That element, which "can be broken down into its parts," requires that: "(1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all."  *Ye*, 484 F.3d at 638–39

---

[2] Defendants cite *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003) as standing for the proposition that "[w]hen a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow."  Def. Mem. Supp. Mot. to Dismiss at 5.  However, I read *Atkinson* to mean that while grievances filed with a large body like a Governor's office may not be sufficient to prove actual knowledge by state officials, a supervisor charged with a narrower and more well-defined scope of oversight may be said to have actual knowledge of complaints made to her own office.  Since the 2006–07 report was allegedly made to the principal's office of the school, *Atkinson* surely cuts against the Defendants' claim that Plaintiffs have not sufficiently alleged facts that would allow a finder of fact to conclude that Assistant Principal Mosakowski had actual knowledge.

(3d Cir. 2007) (citing *Bright*, 443 F.3d at 281–82). "Liability under the state-created danger theory is predicated upon the states' affirmative acts which work to plaintiffs' detriments in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992). "While … the line between action and inaction may not always be clear," this distinction is important because it is a "misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282 (footnote and citation omitted).

As pleaded, the facts assert that Defendant Mosakowski engaged in an affirmative act by "deliberately cho[osing] to assign him [Hochschwender] responsibilities which brought him into regular contact" with young, female students, rendering the minor plaintiff more vulnerable to danger. Compl. at ¶ 22. Defendants cite several cases as standing for the proposition that the "mere failure to protect an individual against private violence does not violate the Due Process Clause." Defs.' Reply Br. in Supp. Mot. to Dismiss at 2 (citing *Bright.*, 443 F.3d at 284 (internal citation omitted)). However, this fails to recognize the unique circumstances of this case, in which two school administrators allegedly *placed* (rather than failed to intervene against) a school *employee* (not a private third party actor) in a situation where he would have unsupervised and prolonged contact with young students (despite allegedly having knowledge of a history of abuse complaints against him). Whether this is an accurate characterization of the events remains to be seen. However, as it would be entirely foreseeable to someone with knowledge of Hochschwender's history of abuse that such an ill-considered assignment of responsibilities without providing for adequate supervision could lead to more abuse of students, and a reasonable jury could certainly find that exposing students to the risk of abuse at the hands of a teacher is shocking, Plaintiffs have sufficiently stated a claim against Mosakowski.

As to the District, however, Plaintiffs allege only that they maintained a policy or custom that led to Plaintiffs' injuries. Pl.'s Br. in Opp. to Mot. to Dismiss at 9 (explaining that Plaintiffs' state-created danger claim is premised upon Jordan's and Mosakowski's personal actions taken "in keeping with District policies."). Accordingly, while violations of the minor Plaintiff's Fourteenth Amendment rights caused by the District's policies may properly be considered under the Plaintiffs' *Monell* claim, the District is not a proper defendant for the state-created danger claim. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (holding that a municipality may be held liable for a state-created danger under a *Monell* theory "if its policy or custom is the 'moving force' behind a constitutional violation.").

Finally, Defendants seek the dismissal of this claim against Mosakowski pursuant to qualified immunity. Qualified immunity shields government employees sued in their personal capacities from liability unless their conduct violates "clearly established statutory or constitutional rights … which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity will protect Mosakowski if Plaintiffs have failed to allege she violated their constitutional rights or if Plaintiffs have alleged a violation of a right that was not clearly established at the time of the conduct in question. *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010) (explaining the two-step analysis of qualified immunity). As I discuss above, Plaintiffs have stated a claim that Mosakowski violated the minor Plaintiff's rights by exposing her to a foreseeable danger of abuse by Hochschwender. The remaining question is whether Plaintiffs' right not to be abused by Hochschwender was clearly established.

As explained in the two related cases currently before the court, I have little difficulty in concluding that it was. "A right is clearly established if 'it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted.' "  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).   To the extent that specific precedent is needed further to define that right, it is supplied by *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989). In *Stoneking*, the Third Circuit recognized that students have a clearly established right not to be sexually abused by their teachers and that supervising school officials clearly violate students' rights if their conduct somehow approves of or assists the abuser's actions.  *Id.*  Specifically, the Court held that "it was clearly established law that … officials may not with impunity maintain a custom, practice or usage that communicated condonation or authorization of assaultive behavior."  *Id.* at 730.  It then denied immunity to two defendants who "discouraged and minimized reports of sexual misconduct by teachers."  *Id*.  *Stoneking* drew a distinction between "the mere failure of supervisory officials to act or investigate," and "affirmative acts" which support a finding of "toleration, condonation or encouragement of sexual harassment by teachers."  *Id.* at 731.

The claim against Assistant Principal Mosakowski does not allege merely "indefensible passivity" where qualified immunity might protect an indolent school official.  *D.R. v. Middle Bucks*, 972 F.2d at 1376 (holdings that plaintiffs failed to allege state-created danger claim based on school officials' failure to prevent abuse).  If allegations before me are believed, a jury could decide that Mosakowski's action of deliberately assigning Hochschwender to take young students was "encourag[ing] a climate to flourish where innocent girls were victimized." *Stoneking*, 882 F.2d at 730.  Discovery is warranted on the claim as pleaded.

## IV.    Title IX Claim

Finally, Count IV alleges that the District unlawfully discriminated against the minor Plaintiff in violation of Title IX.  To prevail on such a claim, a plaintiff must show that at a

federally funded school, a student was subjected to discrimination based on her sex, and an appropriate person had actual notice of the discrimination but was deliberately indifferent to it. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Defendants argue that Plaintiffs failed to allege facts showing an "appropriate person" had notice of the abuse in this case. "An 'appropriate person' … is, at minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.* Whether a person is an "appropriate person" does not simply depend on his job title. Rather, designation under Title IX as an "appropriate person" depends on the individual's actual authority to end the discrimination. *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 172 (3d Cir. 2002). "[A] school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be an 'appropriate person' under Title IX." *Id.* at 171.

This argument overlooks Plaintiffs' allegations that another fifth-grader reported her abuse by Hochschwender to a Darby principal during the 2006–07 school year, and that principal failed to take action by disciplining or reporting the allegation. The Complaint provides few details about the supervisory powers and discretion possessed by that principal, but it is reasonable to infer from the facts as described in the Complaint that a school principal would have the authority to discipline teachers and prevent violations of Title IX. Plaintiffs have therefore alleged that an "appropriate person" had actual knowledge of the abuse by Hochschwender. Additional development of the record as this litigation progresses will show whether that unnamed principal was in fact an "appropriate person."

_____/s/ Gerald Austin McHugh_____
United States District Court Judge